Good morning. May it please the Court, my name is Dallas Lapierre and I'm here on behalf of the appellate in this case, Ms. Tina Ray. I'm here today to ask this Court to overturn the District Court's order granting the motion to dismiss on the grounds of failure to state a claim and for qualified immunity. I'm here today, Your Honors, to discuss two discrete issues. The first is whether or not the well-pled facts considered true and the reasonable allegations therefrom, or I'm sorry, reasonable inferences therefrom, plausibly suggested that the appellee violated Ms. Ray's constitutional rights. The second issue I'm here to discuss, Your Honor, and I'm fully prepared to discuss is the issue of qualified immunity. Respectfully, I believe the District Court erred in both of these decisions. As Your Honors are aware, the first issue that has to be addressed, the first step of this process is to appropriately define the constitutional right at issue in this case. Not referring to general constitutional principles, but without applying the rigid factual gloss of decried in Hope v. Peltzer. And when you define the constitutional right at issue at the appropriate level of specificity in this case, that right is the right of a dog owner not to have her dog destroyed when that dog does not pose a threat to the officer, no longer poses a threat to the officer. At heart, Your Honors, in this case is about an officer who stepped towards a dog who was on a leash, unable to approach the officer, not moving, placed the firearm to that dog's head and destroyed it without cause. And there's a couple of key facts that the court failed to consider true, and a couple of key efforts to be failed. Before you get to the facts, can you go back just to what you said? I mean, I think one of the challenges I've had sort of thinking through this is you talk about defining the right, and you defined it just as, to rephrase slightly, but to not have your dog killed when the dog no longer poses a threat. Yes, Your Honor. Right? Which, and I want to sort of think about that a little bit in the context of excessive force on human beings, right? And so that sounds an awful lot like the test that the court rejected in Scott v. Harris, where the court seemed to suggest, this is a 2007 Supreme Court case, it's not a memory test, right? I'm not trying to get you to where the suspect or the person that shot doesn't pose an immediate threat of physical harm, and that that's the sort of, as that used the word, the magic on-off switch for whether there's an unreasonable use of force. And the court there says, no, you don't get to do it at that level of generality, right? You don't get to say that. You got to look at the actual facts that happened. And I don't mean that it happened on Tuesday and the dog's name was Jax, but more than the sort of broad, is there an immediate threat of physical harm. So help me understand how your definition squares with the excessive force against human beings, where the Supreme Court has seemed to say, that bright line that you've just suggested for dogs doesn't apply for humans. Your Honor, I understand that the kind of slight distinction here is that we're pulling to the facts more specifically in that it's not that the dog doesn't pose an immediate threat, it's that the dog no longer poses any threat. The dog simply no longer posed a threat to the appellee, and therefore there was no cause to justify a warrantless seizure of the dog and killing the dog. And that's kind of the distinction. We're looking more closely at the fact that he no longer poses any threat as opposed to not posing an immediate threat. I understand the standard is that what I'm talking about is the level of generality, though, right? I mean, they're both at the same level of generality. Like, you can only use deadly force in Scott v. Harris, the claim was, you can only use deadly force if the suspect poses an immediate threat of serious physical harm, right? That that's the standard that's proposed. And the Supreme Court says, no, no, no, no, you cannot do this magical on-off switch that triggers it. You've got to look at the facts, right? And so you have a slightly different variation on that, but at the same level of generality, right, that you can't use deadly force against a dog, the analogy would be, where it no longer poses a threat. That, to me, just seems like too broad a level of generality. In contrast, you know, I think it'd be fairly straightforward to say that, you know, under the facts given here, where a dog is on a leash, held by the owner, the owner's calling him back, and the officer walks up, takes a step forward, and shoots the dog. Like, I understand why that's a violation of the Fourth Amendment, but I want to, what I'm trying to understand is why that's not the appropriate level of generality, right? Dog on leash, holding the dog, calling the dog back, officer takes a step forward and executes dog, right? Fourth Amendment violation, let's just assume for my hypothetical, that violates the Fourth Amendment. But why is it that the appropriate level of generality, the facts, that Scott v. Harris requires, not this sort of more generic, you have a general right to only shoot dogs where they're, they pose a threat? And, Your Honor, I would, I would be happy to, to refine that to the, basically the contours laid out in the Altman case by this particular circuit, which states that when a, an owner of a dog has a dog that is not approaching an officer, is, in that case of Altman, unleashed, but with the owner present attempting to restrain the dog and does not pose a threat, the owner is no longer constitutively reasonable to destroy the dog in the presence of that owner. But that doesn't, that doesn't, Altman doesn't tell us the inverse, right? It, Altman just says, where the dog's running free and has, like, tried to bite somebody or done some things before and they're in a pack, right, that that is a reasonable shooting. It doesn't say the inverse, that any other circumstance is unreasonable. I think actually, Your Honor, the Altman does enumerate exactly the inverse when it takes the time to discuss and distinguish the Brown and the Fuller cases out of sister circuits. But it says specifically, before it does that, it says, we do not pass on those decisions, right? So you can't take that sentence and then suggest that the distinguishing of those cases is some sort of a holding, can you? It does, Your Honor, say that obviously the Fourth Amendment rights of the owner of the dog are greater, though unleashed, when the balance, but that, it doesn't establish the other, right? But, you see what I'm saying? Like, to say that this is not a violation doesn't establish what is a violation, at least as I read Altman. Again, Your Honor, it's still enumerating the contours of the right. It's both distinguishing those cases and it is enumerating that there is a greater constitutional interest in, from an owner whose dog is not approaching an officer, is in the presence of the owner's attempt to take control, and in that case, unleashed, where in this case, the dog was not approaching the officer, was on a leash, was being restrained by the owner's hand on that leash, who was attempting to take control, and simply posed no danger to the officer. So I think, Your Honor, the officer... Your position is basically the cases that Judge Richardson is citing in terms of the laws, that yours is so far removed from that, it clearly establishes that you couldn't be in that sphere, is what you're saying? Yes, Your Honor. Because you started off, I think you used the term, no longer, and you probably used that inappropriately. Your position is that it never was, right? No, Your Honor. There was a time in which the dog was approaching the officer and the officer had backed up. Was he tethered? Yes, Your Honor. He was on a tether. That's a factual question whether he ever was, isn't it? Your Honor, it is a factual question that was never addressed because the issue... I mean, because if a dog is tethered to the point where he can go 25 feet and you within 24 feet and you could step back, then it's a question whether or not it ever was a danger. Perhaps. And, Your Honor, that's essentially the facts that we realize in this case. Right. Exactly. That's what you... You might want to move on with your argument there because I think that's what you're saying, that you're so far away from those things, not even close to that line where one case defines what is as opposed to the obverse. You would say you don't really need that. But go ahead. Go ahead. Yes, Your Honor. And, again, I think Altman defines what is acceptable. And this case, again, does not fall anywhere within the sphere of that. And, of course, Sixth Circuit courts have ruled on closer cases factually to this one. And each of those found that it was not constitutional. And so I think the district court, Your Honors, erred in failing to accept the considered true facts in this case and the reasonable inferences therefrom. And the district court did that in a couple of key instances. The first thing the district court erred in, Your Honor, is in finding that the complaint does not state that Jax was calm or that Jax was retreating. And we believe that's an error because there's simply no requirement of magic words to drink...to plausibly suggest the facts necessary in a case. In this case, the considered true facts are that Jax approaches the officer while not barking... I'm sorry, while not running or not chasing him down, but approached the officer while attached to a 25-foot lead. The officer backed up and Jax reached the end of his lead. When he was at the end of his lead, Jax could no longer approach the officer. He was standing still. Ms. Ray had her hand on his lead and was calling Jax back to her. The officer saw that. And that assertion is supported by the fact that the officer then calmly and with a blank and expressionless face stepped forward towards Jax and placed the gun to his head and fired. He never stepped forward towards Jax while Jax was approaching him. It was only after he saw that the dog could no longer approach him that he made that step. The district court also erred in finding that Rhone may or may not have trusted the lead to hold Jax. And, again, that's an inference that the district court was making in the favor of the appellee in this case and is simply applying essentially a summary judgment standard rather than accepting as true the well-plaid facts that Jax could not approach the officer and was standing still and that the officer saw that based on the additional facts supporting that. I think the facts in this case was that the dog was doing pretty well. It was playing with the other officers before that officer got there, right? Correct, Your Honor. And, actually, the other officers were screaming for the officer who did shoot the dog not to die. The other officers said, Get back, get back. The dog is fine. The dog is fine. But he got out, right? Got out of his vehicle, right? Yes, Your Honor. While they were telling him to step back and leave the dog, Your Honor, he got out of his vehicle and then, once the dog was not moving, stepped forward and destroyed the dog. He shot the dog in the head. Yes, Your Honor. Now, Mr. LaPierre, what do we do with the fact of the audio recording? You know, that's what's troubling about this case, at least to me. You know, it's kind of the elephant in the corner. I know we need to analyze the complaint. But we know from that audio recording, and the district court knew, that the plaintiff was not being truthful in some respects in her pleadings. Now, we have to take the allegations as true, but certainly you acknowledge the tension there, where she said she wasn't even there when this occurred, and the pleadings clearly indicate what she saw. How do we deal with that in this case on appeal? Yes, Your Honor. There was an audio recording that contained contradictory statements by the plaintiffs. One set was she was saying she was there and the dog wouldn't have attacked him or wouldn't have bit him. And another set where later in the conversation she says the opposite. Obviously, we believe there's some duress associated with that. Here she is being placed under arrest by an officer who's just destroyed her dog who's saying, okay, I'm not going to search your house now. Let's talk about this thing about the dog. And suddenly she makes a different statement. There's also the fact, Your Honor, that as we did demonstrate in response to various motions in this case. So you're saying we ignore. I don't mean to cut you off, but I just want to make sure I understand where you're heading. So you're saying that it is improper for us to consider the audio recording? I think, Your Honor, the audio recording is exactly what discovery is needed for as this case moves forward, past the motion to dismiss stage. It very well may be on summary judgment. Yeah, no, no, I understand that. But do we just – and I understand the lens that's applied in a motion to dismiss case. But we also know that this exists. And so you're saying we're required to just put it aside because it is a motion to dismiss and not a motion for summary judgment. Is that your position? I'm saying both yes, Your Honor, that, and that there was a lot of other evidence that was produced in response to motions that show both photos of the dog at the end of the lead, that show witness statements that were made from witnesses on the scene saying they were consistent with the complaint, that there was an exhumation of the dog and a necropsy performed to confirm that there was the placement of the firearm, the trajectory of the bullet. There was a lot of supporting evidence as well as a contradictory tape that has two versions of offense stated on it within the confines of the tape. And that's one of the reasons why it is appropriate. Do we have to look at that under Twombly like a plausibility kind of story and in essence what you're saying is, yeah, there's some inconsistency here, but that doesn't make the complaint implausible. And if it's plausible under the sort of pleading standards we get under Twombly and Eight Ball, then we've got to accept it as true once we decide that it's plausible. Is that a fair sort of summary of what you're saying? Yes, Your Honor. I think specifically there's enough here to plausibly suggest that evidence would be discovered in discovery that would support these claims. There's enough evidence in there and there's enough inconsistency in the tape. Yes, Your Honor, that's exactly what I'm saying. And then moving quickly as I need to with the time I currently have, Your Honor, is to the qualified immunity analysis in this case. The district court found qualified immunity solely on the basis that there was no constitutional violation. And as we just discussed, I believe the facts here are so far outside of what— Will you start with telling me what the best case for you is to establish that this was unlawful? What's the best prior case to establish that this was an unlawful shoot? Of course, Your Honor. In looking at the best case to provide fair warning to this officer that a reasonable officer in his situation would understand his acts violated the Constitution, the first one has to be the Altman case, Your Honor. Okay. Go to the second one. Assume that that one is not compelling to me at least. And I know your light's on, but the Chief will give me a little bit of leeway. Where do I—give me numbers two and three on your list, if you would. Your Honor, looking outside the circuit, there's a confluence of cases— Do you agree there are no other cases in the circuit? On this specific issue, you have this posting of facts. No, Your Honor. Which is fine. So what are the—give me your best two, and I can look them up. But tell me which are the best two out-of-circuit cases for you. There's the Crisco case, Your Honor, where an officer and his dog were— Which circuit? I'm sorry, the 9th Circuit, if I remember correctly, Your Honor. Okay. The police officer and his canine were initially approached by a dog that was barking at them. The dog stopped barking at them. The owner was about a foot away, attempted to put a leash on the dog. And then the officer drew his weapon and shot the individual dog in that case. And the circuit court found—I'm sorry, the district court found that that actually stated a case— or I'm sorry, plausibly suggested that a constitutional violation occurred. And then it went to summary judgment, which was on appeal when it was denied. And the court found that— Wait, is that a district—I'm sorry, maybe I'm not—I don't recall this one exactly. But is this a district court decision or a 9th Circuit decision? The 9th Circuit Court of Appeals is the final decision. I'm sorry, Your Honor, I was taking you through kind of the history of the case there without clarifying that issue. I'm trying to save time, and I don't think I did. That's okay. I apologize. But the end result, Your Honor, was that the 9th Circuit Court of Appeals stated that it is unreasonable when a dog is unleashed in the presence of its owner who is attempting to take control of the dog, no longer approaching the officer, for that officer to then shoot the dog. The court said that in the case where the dog was, again, unleashed, unlike here where the dog was leashed. And the court specifically addressed the fact that the officer in that case was trying to say, well, this was just a few seconds, so it should have been reasonable. And the court said that granting qualified immunity on the sole basis that the events took place in a short period of time would be to deny Hope v. Peltzer— All right, just because we're out of time, can you give me the third case? You don't need to describe it. Just tell me what you think your next best case is. That's the Brown v. Muhlenberg Township case, Your Honor. Again, the case of the dog was not approaching the officer with the owner's present unleashed but not approaching the officer when the officer decided to shoot the dog. And again, the court found that it was unreasonable when the dog is not approaching or posing a threat in the presence of the owners to destroy a dog at that case. Thank you, Chief. Thank you. Dr. Keenan. Thank you, Counsel. Ms. Johnson. Good morning, Your Honors. May it please the Court, my name is Carlene Johnson. I represent Michael Rohn, who's an Augusta County Deputy Sheriff and a member of the Cross-Jurisdictional Drug Task Force, as alleged in the complaint. In a short moment, the exact terminology that's used in the complaint, after Michael Rohn got out of his vehicle and shut the door, a 150-pound German Shepherd, alarmed and barking, had approached and closed within a foot of him when he fired one shot and the dog died. The officer immediately yelled, this is quoted in the complaint, What did you expect me to do? He was going to bite me. As it turns out, the dog was on a 25-foot zip cord lead contraption between two trees in the yard that allowed the dog the run of the yard. I would note that in the complaint, it refers, and I believe the paragraphs are paragraph 15 and 22, to the four officers who had previously arrived prior to Officer Rohn having noticed that there was this 25-foot zip line contraption between the trees and that the only reference, I believe it's in paragraph 22 of the complaint, to Ms. Ray controlling the dog and to anyone being aware of that were these four officers being aware of that, the ones who preceded Deputy Rohn's paragraphs 15 and 22 of the complaint. Wait, wait, I'm sorry, because I read the complaint as saying that the officer, and I'm just taking the complaint, right, but the officer, and I can try to find exactly where it is, but the officer saw, right, the officer, your client saw that Jax had reached the end of his lead and that Ms. Ray was holding on to the fully extended lead, yelling, Jax, Jax, it's okay, come here. And it's at that point that your client stopped backing up because he both saw that Jax could not get any closer and that Ms. Ray was holding the zip lead and yelling Jax's name. The reason I pointed out the distinction, Your Honor, is because, and I believe that Mr. LaPierre, both on brief and here in oral argument, has referred to Ms. Ray holding a leash. The word leash nowhere appears in the complaint. Everybody understands what it is. It's a lead. We understand what it is, but what I'm saying is, you're saying that nobody saw that she was holding on to the dog and that the dog was attached, but the complaint alleges that your client saw that he was at the end of the lead, in other words, could go no further, and that it was being held by the dog's owner, and that the dog's owner was beckoning the dog back, however effectively. Right? I mean, those are the well-pleaded facts. We've got to take those as a given, right? I would submit, Your Honor, that those actually are conclusions, and there aren't sufficient facts alleged to support the conclusions that, as to what it is that Deputy Roan saw, that he saw, what they're trying to imply. I don't think they use the word threat. What they're implying is the conclusion that he didn't see a threat anymore from the dog. What I pointed out, complaint paragraph is painful. But it doesn't say that, right? It's stating, I mean, they're facts. They're not conclusions, right? Held, yelled, saw, hold, right? I mean, those aren't conclusions. I mean, at least as pled, they sound a lot like facts, right? I mean, I'm holding the pencil. I mean, you could say that it's a conclusion, but it's a fact. I mean, I'm holding it right here. The conclusion, I submit, Your Honor, the conclusory assertion is as to what it is that Deputy Roan saw and understood from what Ms. Ray is alleged to have done. And the reason I pointed out complaint paragraph 15 is because this is not just a dog on an ordinary leash, as we all might think of as a leash. This is a dog that turns out to have been on this 25-foot contraption zip line between two trees. And the only allegation in the complaint to who had notice of this dog being on this zip line that would enable it to, in that short moment, have closed on this officer within a step when he fired a shot is in paragraph 15. And it refers to the four deputies who were there previously to Deputy Roan, having been aware of that. And the reason you say that is because you interpret the Roan saw that Jax could not get any closer and that Ms. Ray was holding the fully extended zip lead. You want us to ignore that because that's a conclusion. What he saw, what he physically saw, is a conclusion, and so we should ignore it. I don't think you ignore it, but I think you look to see whether there are sufficient facts alleged that would allow for the objective determination, which is what the court is supposed to do, putting itself in the officer's shoes, the objective determination in that short moment when you had that dog have been closed on the officer within a short moment to within a step, 150-pound dog, whether it was objectively reasonable for an officer in that circumstance to have no longer believed he was threatened or facing a threat. And I think you have to take into account... But the pleadings themselves, if you look at the complaint, you know, Jax had reached the end of his lead. He could no longer reach Roan by any means. As Roan moved backwards, Ms. Ray held on to the fully extended lead. Roan saw that Jax had reached the end of the lead. He saw that the dog could no longer approach Roan, and yet he then went and got his gun, took a step forward and shot the dog. I mean, why isn't that sufficient? I mean, I agree with you. There are a lot of troubling things about this case, this audio recording, and, you know, there's some stuff that isn't directly in front of us, but in terms of what's factually alleged, the factual allegations are that he knew the dog couldn't go any farther. The dog was restrained. His fellow deputies had told him, don't worry, you know, relax. She'll get the dog. And then he took a step toward the dog with his gun and shot the dog in the head. Why isn't that factually sufficient to go forward in the case? It may well be that you'll win on summary judgment, but why isn't that factually sufficient? I would submit, Your Honor, that this all happened in a short moment. And within a short moment, that dog had closed to within a step of the officer. Well, those are inferences in Officer Roan's favor. And at this stage, we've got to – we have to take the facts as pleaded and reasonable inferences in favor of Ms. Ray. Sure. And within that short moment, putting the court in the shoes of a reasonable officer – That's not the standard, counsel. I'm sorry? That's not the standard. Putting the court – putting themselves in the – that's not the standard, is it? Are you representing to the court that's the standard? It is. For qualified immunity, for the court to put itself in the shoes of the officer? I'm asking a very specific question. Are you asserting that that's the standard? Yes. It is? The judge puts themselves in the shoes? I thought it was what a reasonable officer might do, would have believed under circumstances. A reasonable officer. Officer. You can't hear me? Sure, a reasonable officer in the shoes of the judge. But that's not what you said. You said the court put themselves in the shoes of the officer. That's what you said. Unless – was I misinformed? Did you say that? If I said that, I misspoke. Okay, all right. Well, you misspoke. Okay. But that's – right. It's what a reasonable officer would have done. Correct? Well, to put oneself in the shoes of the officer in the circumstances and determine whether or not a reasonable officer would have felt threatened, felt it was reasonable to take a self-protective action. Right. After seeing under the facts pled that the dog had – as a matter of fact, it's more favorable that it wasn't a leash because a leash, it depends upon the holder moving forward. So it's infinitum as to the reach, but the zip line has a termination. And the fact is that, as pled, he's reached that. That's the terminus, and he's been held. So even if the person lets go, that's still the terminus, as pled. And you're saying a reasonable officer, as a matter of law, wouldn't know that he couldn't step forward and shoot the dog in the head. Right? That's you when, at this point, as a matter of law, right? That's what your position is. That a reasonable officer would not know that he was not. Allowed to just step forward and get back into the sphere of danger and shoot the dog in the head. When he knew the dog posed, according to the pleadings, posed no danger to him because of the adequate restraint. That's the allegation. Now, it might be different on summary judgment after you get your depositions and everything. I equate, Your Honor, the reason I had said earlier, the conclusion as to what the officer knew is a conclusion that has to be shown by sufficient facts. Iqbal had the same allegations of knowledge. And, in fact, I believe, Your Honor, Judge Keenan's decision in, for example, Walter's case, I think it was 2012, there was the allegations of knowledge and actual knowledge on the part of the defendant. I don't recall if it was the defendant. Right, but knowledge is different than vision. Right? Knowledge implies, like, if you don't explain how they have knowledge, then knowledge is what Iqbal talks about. But what you're saying, he saw it. I mean, that's just a physical view. Can you turn for just a second and assume, for the purposes of argument, that there was a constitutional violation and address the second part here? So, like, I know I'm not asking you to waive the first argument, but just assume for a minute that you've lost on that end and we're only talking about the second step. Sure. And, Judge Richardson, you've spoken earlier to the Scott v. Harris case, the Supreme Court case. I think there have been many more since then, including even earlier this year, the city of Escondido procurium decision from the United States Supreme Court. It's cited in the brief, and it also quotes the Kissel, and I might be pronouncing that wrong, K-I-S-E-L-A case, which was also a procurium decision from the United States Supreme Court in 2018. The Escondido case says specifically, emphasizing in a Fourth Amendment use-of-force context specifically, under our cases, the established right must be defined with specificity. Specificity is equally, especially important in the Fourth Amendment context where the court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue. And it goes on to say they stress the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment, and the court should have asked in that case, Escondido, whether clearly established law prohibited the officer in stopping and taking down, in that instance, it was a person in these circumstances. And I would submit, Your Honor, that we don't have to do that. There seems to be, at least in some of the cases, there seems to be an exception to that. Where there's not precedent that governs, there can be an instance where it is so obvious that the lack of a precedent doesn't prohibit rejecting a qualified immunity defense. Sure. A person tied to a pole for 15 hours in the heat in Alabama, I believe it was, and the severity of that circumstance, I think, has been held to be such a case. Would you find that that sort of carve-out, if you would, would have been satisfied if Officer Rohn had walked in and shot a chihuahua sitting in its dog bed? I mean, would that be like – I would think that would be something you don't need to have a case on point to show that it's egregious. In fact – So tell me why this case, in your view, based on the well-pleaded complaint, this case is not the little chihuahua in its dog bed, which let's just take as a given for purposes of our discussion, would be so clearly a violation that we may not need to get there, why this is different. Okay. And I'll look at the Altman case. Your Honor, Chief Judge Gregory dissented in that case other than with respect to finding the dog in effect. And I looked very carefully at Your Honor's dissent in that, because I thought it was significant there. The two officers who were the defendants in the Altman case were animal control officers. We used to call them dog catchers. Their job was to go out and bring in dogs that were running at large. And they had dog catchers. They had pole catchers. They had tranquilizing guns. They went out looking for dogs. They knew they were going to encounter dogs. The complaints had been made out of them. And with all of that coming into that, these two officers had multiple instances of shooting dogs. Instead, dogs that were, as Your Honor referred to with respect to the three Siberian Husky dogs, they were 15 pounds each. Your Honor referred to them as puppies. There was a dog that was 150 to 225 feet away from the animal control officer when they shot him. My taking from the dissent was Your Honor was concerned that these were officers who were not shooting dogs in circumstances where there was a danger. They were shooting dogs because it was convenient. They were not taking lesser measures that these officers, as animal control officers, had available to them. The majority, the precedent we had in the Fourth Circuit prior to this incident was that nevertheless, those dogs in those instances, the Larson incident in the Altman case, the dog was 10 feet away in its yard and walking away from the officer when that shot was fired. The Fry incident was the 15-pound, 7-month-old puppies. In fact, the owner scooped up the third one, so the third one didn't get shot right there during the incident. The Wallace incident was a Golden Retriever 15 to 20 feet away from the dog when the officer shot him. And the Altman incident was the dog that was running. In Altman, the dogs were unleashed. They were unleashed. And wasn't this part of the problem here in the analysis, it seems to me, that the district court was relying on summary judgment cases in disposing of the motion to dismiss, didn't say I'm converting the motion to dismiss into a motion for summary judgment, but then proceeded to analyze it as a summary judgment case by using the case law that she cited uniformly were summary judgment cases. And it seems to me that maybe the district court missed a step here. Maybe she thought she was doing a mercy killing of a case that she didn't think was going to make it through summary judgment. But isn't there a problem here with the analysis being one of summary judgment analysis applied to a motion to dismiss? I think the district court applied the correct standard and, in fact, has noted in several places if there's any disagreement. She's taking what the allegations say on their face. Right, but the cases involved dogs that were running at large, were posing a risk, or it was totally unknown whether there was a risk, not a dog that was leashed and allegedly completely under control and not threatening. Those cases didn't involve that. Well, a number of the cases outside the circuit certainly did, and I think the Altman case is the only one we had in the circuit at the time. Subsequently, there's the Lee against town of South, town of Fort Mill case in which we have an officer who shot a dog that was in its yard, had been on the porch when they'd first gone around the house. The owner was on the porch. The owner had just stepped inside. The dog was 20 feet away when the officer fired three shots. The district court was determining what does an objectively reasonable officer do in these circumstances in dealing with a dog and considers the dog dangerous or not. Not just what an objectively reasonable officer would do, right, because that's the first part of qualified immunity. The second part is, is there a precedent, as you described earlier, that governs? And the challenge, it seems like to me, for your colleague is what is the case, certainly in circuit or a well-established out-of-circuit idea that shows that it governs this conduct? And the problem is there are just not very many cases that are analogous where a dog charges, reaches the end of a leash or a lead. It doesn't matter to me what the word is, and it's barking, but there's an owner there. I can understand why that's unreasonable, but what I don't see are cases establishing that. And so I think even in your argument, you're conflating a little bit what a reasonable officer would do versus what the prior precedent has instructed. Well, I agree it's difficult, and I think it was what I took from Junkerture Gregory's dissent in Altman as well. I think there is a little tension there. Just in terms of the you've got a use of force, but it's a seizure of property, but this is not luggage. It's a dog. You've got the officer safety issue, which is of paramount importance. But to be a seizure that is entitled to Fourth Amendment protection, it has to be not only in effect, which the dog was determined to be in Altman, but it has to be an unreasonable seizure. And so that's step one of the qualified immunity analysis is also what you have to have to state a claim. And then even if it's determined to be unreasonable, that's step one, then it has to be something that is clearly established. Right. But isn't the out-of-circuit precedent pretty clear that you cannot use deadly force against a household pet unless the pet creates or has created an immediate danger to the officer? I mean, you've got the Seventh Circuit. You've got the Second Circuit. I mean, I've got the list of cases here in front of me, but you have the, you know, Vileo v. Iyer. You have Robinson v. Pizzat. You have the Ninth Circuit in the Motorcycle Club case. You have the Third Circuit in Brown. I mean, they're uniformly saying that in order to kill a household pet, there has to be an immediate danger so that the use of the force is unavoidable. Isn't that correct? And this is the allegation that we have here. I agree with you. This case may well go out on summary judgment, but it seems to me that the out-of-circuit is just uniform and clear. You can't kill the dog unless the dog is in immediate danger. So you look at the facts that are alleged. None of those cases in which the force was found to be unreasonable involved a dog that was within a step of the officer. And the allegation is a short moment. That dog had closed within a step of the officer. Right, but the allegation, you're asking for the inferences in favor of the officer. I think that gets back to the problem again. The inferences in favor of the plaintiff are the dog posed no danger. The dog was fully restrained. Everybody there knew that the dog was restrained and not a threat. And maybe they can't prove it, but that's what they've alleged, isn't it? I don't think that the allegations are that with respect to the allegations. If we need to go back to them, I can pull them out again. But the allegations are pretty clearly that the pet posed no danger. Which is a conclusion. That he was securely restrained on the leash line or on the lead. I believe, Your Honor, paragraph 30. Roan saw that the dog could no longer approach Roan. That's pretty clear, isn't it, under the pleadings? In that step away. And what if? And I'm not saying you conjure up facts in Roan's favor. But it's in this short moment that a dog has closed within a step of Roan. Your Honor, I would mention the Velo case. It's the Seventh Circuit case that Drunner had mentioned. There, actually, the court held that there were five shots fired. The first two shots had fractured the dog's front legs and it retreated into the bushes. The court held those were considered reasonable. It was only the third and fourth shots after the dog had limped out, whimpering and trying to — Right. Because there was an issue of the immediacy of the danger. Right. But the legal principle, if I could quote the court, was, the use of deadly force against a household pet is reasonable only if the pet poses an immediate danger and the use of force is unavoidable. And in that case, there was a question as to whether the pet posed a danger. And here, the allegation, whether it's true or not, we don't know yet, the allegation is that the pet posed no danger. But if that's considered to be a factual allegation, then any time we have any excessive force, whether it's a person or an animal, on the pleadings, if somebody alleges and the person wasn't a threat or the dog wasn't a threat, then they get past the pleadings. And I don't think that's the pleading's danger. They didn't allege that they weren't a threat. They gave facts. The threat, the dog not being a threat is a conclusion. The facts that support that conclusion are what matter. And that is, it's at the end of the leash. So I thought your response was going to be a different one, not to fight the facts, but instead was to say, to the extent that the Seventh Circuit or other circuits have said some version of you can only use force against a pet where there's an immediate threat of harm, that that's inconsistent with, you know, you cited the city of Escondido, I cited Scott v. Harris, that that type of broad legal principle doesn't establish the prior precedent required under qualified immunity. Right? That that's what city of Escondido, you report. I don't remember that particular case. But I do know that that's what Scott v. Harris says in the context of excessive force against a suspect, that you don't get to adopt this broad test. Instead, you have to look at the actual facts of those cases. So we've got to look at, is the Seventh Circuit case where you shoot the dog and it goes in the woods, like, are those facts sufficiently specific, delineated with specificity to show that that precedent would have put a reasonable officer on notice that what happened here, that is a dog on a leash, restrained, unable to get to him, cannot be shot. Do you see what I'm saying? I do, Your Honor. I think that the qualified immunity is a very strong argument, and I don't think there was precedent in the facts of any of these other cases, which are quite unlike the facts that are alleged here with respect to Deputy Grom. Put him on notice so that no reasonable officer in his shoes, in those circumstances, would have done what he did, which is what the standard is supposed to be. But the analysis may be a little different in the sense it wasn't established even in Altman, that owners have a possessory interest in their dogs and it's covered under the Fourth Amendment. You can't seize. That's established. Now, the facts of those cases is another thing, but that's established. But here what at least is alleged is, okay, the owner has the right. The dog is at home. The dog is in his yard. And most dogs are protective because they're in their home. This is not an unknown dog, a marauder dog running around. In other cases, nobody knows him. And it doesn't matter how many feet away, perhaps, you could say. But here we know that. Owner has the dog. The dog is at the point, as alleged, that he's no longer a danger. Then you go back to the position the law has established. You can't kill their pet. And that's a factual question. It's a summary judgment later on whether or not that's the question. But it doesn't have to be established that every fact matches up. But the principle of law, as you should have known, is that you can't kill the owner's dog in their yard if they don't pose a danger. And what they're alleging is that there was no danger. That's the principle. You say, well, I didn't know I could kill everybody. I think most officers know you can't walk into a yard and just, oh, there's a pet over there, shoot him, right? So the point is, the question then is, what was the danger? And here the plaintiff says zero because he had got to the end, she was holding him still, and he actually walks forward to shoot the dog in the head and make the affirmative step to go into, if you will, a zone of danger, reenter or enter it, whatever you want to say. So that's the principle in terms of what a reasonable officer should have known. It's clearly established that you can't kill a person's dog in their yard. You just can't do that. So the officer would have to have some factual danger to say that's the exception. And there are exceptions. But as planned now, that exception doesn't apply because the dog was zero danger, as a matter of fact. And you have to take those facts, don't you? I take the facts that it was a 150-pound dog that in a short moment, it was within a step of the officer when he fired a shot. I don't take as a fact what I think is just a conclusion. It has to be shown by the facts. The officer was not in danger. I don't even think they've worded it that way. But I don't think you just take that as a fact. I think as with knowledge, whether somebody has actual knowledge, and there are all kinds of cases where there are those kinds of assertions, allegations that are made, especially in Fourth Amendment cases, that are not taken as fact. And here also, I think it matters, this 25-foot zip lead line that's running between two trees. And those facts put together in that moment, and as in the shoot case, which is one of the cases of many cases that the district court looked at in determining what it is reasonable, what is found to be reasonably for objective officers to do faced with a dog in the shoot case. The owner had grabbed a hold of the dog and was holding the leg, and the evidence in that, the fact was the dog had stopped. The owner had gotten a hold of the dog's leg when the officer fired the shot, and yet that was considered to be not a Fourth Amendment violation. The dog is still mobile to the discretion of the owner to move forward. Here, that's not the facts. Here, as alleged, the owner could let him go. They still couldn't go any further, as alleged. That's a different case, right? It's like people tell you, oh, the dog doesn't bite you, but it's probably still running toward me. That's a different case. I'm sorry, Your Honor. That's a different case because obviously what I see is a dog coming after me. Okay, so if we're going to take a lead that's from a zip line at an angle like this and it is fully stretched, that lead, what if the dog jumps up and he's got another step? Where is that coming from, counsel? Is that a fact in the case, or are you saying that's what you argue to jurors? No. That's what you argue to jurors, don't you? And this is something. I know, I would. I'm sorry. I would argue that too, but we're not at that stage. The Graham v. O'Connor case, I mean, and it reverberates through all the decisions, including it's mentioned again in the Fourth Circus decisions regarding dog shooting, is you don't look at the officer's reaction in that moment. In the split second, you've got a tense, evolving circumstance. This is a short moment. That's the fact that's alleged in this complaint, that the officer is having to deal with this circumstance, not an officer. What do you get that exigency from these facts? There was a brief moment and he had to make a decision. It says a short moment. Well, he walked forward and shot the dog. You've got to take the fact. Where is the exigency even in that? In other words, they say that dog is at his end, and he walks forward and shoots the dog. It didn't say that he was back on his heel and the dog was still coming. That's facts, really. I know, counsel, you disagree with those facts, but you have to accept them at this point. I'm not disagreeing with the facts, Your Honor. What are you disagreeing with? I'm sorry? What are you disagreeing with? That the officer, that it was, apart from qualified immunity, I certainly think it's not clearly established, but a reasonable officer in the shoes of the officer in these circumstances who gets out of his truck, it says, shut the door. In a short moment, a 150-pound German Shepherd that is alarmed and barking has closed. I would have opened the door again. Well, that, you know, and, Your Honor, Your Honor was on the panel for the procurium decision in the Lee case, and in that case, on summary judgment, the evidence there was a dispute as to whether or not the officer had actually shut the door, didn't shut the door. If he hadn't shut the door, should he have been considered to have been able to move back into the truck? Should he have gotten on the truck? Should he have used a taser? None of that was considered to be what an objectively reasonable officer would have been called upon to do, because what the court was determining is whether what the officer did exceeded the bounds of the Fourth Amendment. Not whether it was the best choice. Not whether there may have been other alternatives. Not whether, as we sit here today, do we know whether that — And that was a summary judgment case, wasn't it? It was, Your Honor. But we still have the Federal rules of civil procedure, and increasingly, the Supreme Court saying that you have to plead facts to get past the pleas. If you don't state a claim, you shouldn't get discovery. And I'll tell you, Your Honor, there's a reason why this recording is in the record as early as it's in the record, because the court has said, the Supreme Court especially has said, that the Federal rules should be given weight to rule one of the Federal rules of civil procedure, the just, speedy, and inexpensive determination of every action. I wanted to make sure that the Plaintiff's counsel was aware of that. And, in fact, I've made the alternative argument for affirming the dismissal with respect to qualified immunity because of the motion speaking to require the Plaintiff to respond with specificity and allege facts showing why the officer should not be entitled to qualified immunity. The District Court did not reach that because the District Court dismissed for failure to state a claim and alternatively qualified immunity on the pleadings. But I would submit, Your Honor, that the record shows that alternate basis for affirming the dismissal as well. I don't know how long my light has been red, but it certainly is now. If you have any further questions, I'll certainly be glad to try to answer them. Thank you, Your Honor. Thank you. Your Honor, I have just two issues that I think we need to follow up on here. The first issue is, Your Honor, I think we have to come back to the complaint. The complaint was very careful to lay out facts, not conclusions. In paragraphs 30 through 39, the complaint lays out how Jax approached the officer and then reached the end of his lead. That Jax could not move forward anymore because the lead restrained him. That the owner had her hand on the lead and was calling the dog back. That the officer saw that the dog could not approach him. That the officer then calmly and with an expressionless face stepped towards Jax. That the officer then placed his firearm to Jax's head and fired a shot that killed the dog. None of these are conclusions, Your Honor. These are facts that lead to an inescapable inference that the dog no longer posed a threat. My co-counsel in this case raised the point that the court had before it a motion for obviously dismissal on the basis of failure to allege facts sufficient to support the denial of qualified immunity in response to her motion for reply to answer. The plaintiff did file a response to that answer. It was 23 pages, included these key facts as well as multiple others in a separate fact section specifically entitled Detailed Factual Allegations on Qualified Immunity. Taking these facts as true and any reasonable inference therefrom, we're in a situation where we have a dog on a leash or a lead that cannot approach the officer of which the officer at least sees with the owner nearby attempting to take control. Looking to whether or not the qualified immunity should be branched on the clearly established part of that, we have to have cases sufficient to place a reasonable officer in the position of the plaintiff and the facts that the defendant officer in the case is facing would be aware that his actions are in violation of the Constitution. Looking at the cases here in the Fourth Circuit, the Altman case is the key case. In that case, you have uniformly a situation where you have at-large dogs, not at home, off of a leash that are approaching the officer or at least approaching somebody else that have been confirmed to be in danger with no owners present trying to take control. Looking at the confluency of the Sister Circuit cases, that is true of almost every case where a dog is found to be reasonably destroyed. I understand the Sister Circuit, but I want to go back to Altman because you keep coming back to it. I want to make sure I understand. Can you ever look at a case that finds no Fourth Amendment violation and from it infer? I mean, you're asking us to infer from Altman that if the facts were different, that Altman would have come out the other way, right? Where Altman seems to say it's not a violation for these reasons, but it doesn't stand for the inverse proposition that if these reasons were missing, it would necessarily be a constitutional violation. I mean, I understand the other circuits, but just on Altman itself, how do we get the inverse from Altman's opinion itself? Yes, Your Honor, and the key there, and I think it's uniform across all cases, in dog shooting cases, the key is that the touchstone balance is the owner's interest, a sensory interest in their effect, the dog, versus the government's interest in the safety of officers. It is clear from the facts here that the dog no longer presented a threat to the officer. So it's just – Right, but the challenge that Altman tells us is there's this balancing, right? And that's something that, you know, judges and lawyers are familiar with, like how we balance these competing interests in the Fourth Amendment context. But it seems like what you're suggesting is that a reasonable officer should, you know, be doing that sort of balancing in their mind of, okay, well, now my interest is higher because of this, but the owner's interest is lower because of that, and that seems to sort of run counter to the sort of principle we've talked about, that, like, the precedent must define with specificity what is unconstitutional, right? As not – because if your standard was right, there's always this balance, and if the officers are supposed to be doing the balancing, there's never the specificity that's required. Now, I understand maybe there's specificity in out-of-circuit cases, but what I don't understand is how we get it out of Altman. Yes, Your Honor, and I'm exactly not attempting to make an officer do a balancing act. What I think here is that the facts that we have here are a leashed dog under the control of its owner, unable to approach the officer, and the officer sees that fact, poses no threat. I think, before we even look to factually specific case law, that is a principle of law that if the dog poses no threat, you may not, consistent with the Fourth Amendment, seize a dog by destroying it, so applicable that it applies to these facts just on the clear nature of that constitutional right. You have to have some kind of justification for the destruction of the dog, and based on these facts, it's clear that there is none. And then, looking at Altman itself, Altman stands for the principle that it is permissible, consistent with the Constitution, to destroy a dog that is unleashed at large without an owner present, posing a danger to the officer or the public. It also mentions that the inverse of that, where it is unleashed but in the presence of the owner and not presenting a danger, the constitutional balance is different. So it does indicate that generally— It says it may be different, but they're not passing on that. I mean, I get it if they had said more, but what they say in Altman is, we don't pass on this. There are different interests in this weighing back. There are different interests if this was the case or that was the case or the other was the case, but they don't reach the sort of conclusion that you're drawing from it, which is because this is different, it would be unreasonable under the Fourth Amendment. Because this is unreasonable, it would be unreasonable under the Fourth Amendment. It begins all of that discussion by saying, but we don't pass on these questions because they're not presented there. I mean, a wise decision for the court to not pass on facts that weren't presented. Of course, Your Honor, and that's why I'm starting. My first part of the analysis here, Your Honor, is, is it so clear, even without precedent— But as a matter of fact, Altman said—I'm surprised you're not—Altman said plainly, quote, plainly it would be a waste of words to inquire into whether the complete and irremediable destruction of an individual's property constitutes a seizure. When officers kill a dog, they have undoubtedly seized it from its owner. The principle established there, and the point is here, that being established law, if the dog poses no harm as pled here in its yard, it's nothing but being a dog, which is property, and you have no basis of killing the dog. In other words, you could say, until we found a case where somebody went out and just shot Little Fido for doing nothing, you didn't know you could shoot Little Fido. No, Little Fido is protected under the Fourth Amendment, and it's plainly, as a matter of fact, he said you don't even need to waste words on whether or not that's taken somebody's property. And what you're saying is, well, the fact here is that the dog was no—if this was a case where he's lunging, he could have been—you know, we're saying whether or not, how do we know she could have held him? The fact is that the dog, if it's a pled, was no danger. It's no different. We could make him that chihuahua who's sleeping in his bed because both are no danger, period, because he's a 150-pound German shepherd in his yard that poses no—does not take him out of his own protection because he happens not to be a chihuahua, and he's not sitting in his bed. That's what's established in the Old Amendment, not whether or not the fact— Well, that's—I don't know why you keep going back and then you went back and come upon rebuttal, and you went right back to Judge Richardson when he was right. Those facts don't prove the obvious in terms of those situations, but it does establish that the dog is protected. It's the owner's property in their yard, and here what we have is no danger. And you're saying there's got to be a case that says, well, you know, there's no danger. It's a dog. I'm going to shoot the dog in the head. At least at this point, it's not summary judgment. I mean, you've got to argue the case that you have. Well, go ahead. I know time is up. Do you have anything else? Yeah, I do. You have anything? Thank you. Thank you, Your Honor. We'll come down—I think we're on a break. Break? Yeah. We're going to ask the clerk to give us a brief recess, then we'll come down and recount. This Honorable Court will take a brief recess.
judges: Roger L. Gregory, Barbara Milano Keenan, Julius N. Richardson